**KING–SEELEY CORPORATION, a Corporation, Plaintiff,**

v.

**COLD CORPORATION OF AMERICA, a Corporation, Defendant.**

**Civ. A. No. 56 C 1517.**

United States District Court
N. D. Illinois, E. D.

March 31, 1960.

Hofgren, Brady, Wegner, Allen & Stellman, Chicago, Ill., for plaintiff.

Max R. Kraus, Maurice P. Golden, Chicago, Ill., for defendant.

MINER, District Judge.

### Findings of Fact

(1) Plaintiff is a corporation organized under the laws of the State of Michigan having its principal office and place of business at Ann Arbor, Michigan.

(2) Defendant is a corporation organized under the laws of the State of Illinois having its principal office and place of business at Chicago, Illinois, within the Northern District of Illinois, Eastern Division.

(3) The Court has jurisdiction over the parties and the subject matter of the Complaint and the Counterclaim.

(4) The predecessor of the plaintiff King-Seeley Corporation, namely, Queen Stove Works, Inc., had, since the grant thereof to said Queen Stove Works, Inc. on July 10, 1956 until the transfer to the plaintiff, King-Seeley Corporation, the entire right, title and interest in and to United States Letters Patent No. 2,753,694, and the plaintiff, King-Seeley Corporation, now has the entire right, title and interest in and to United States Letters Patent No. 2,753,694, together with the right to bring and maintain a suit for any and all past and future infringements thereof.

(5) The invention of the Trow and Nelson patent No. 2,753,694 relates to an ice chip producing machine having a

cylindrical freezing chamber, with refrigeration means surrounding the major portion of the freezing chamber and having liquid supply means for supplying liquid to be frozen in said freezing chamber and including an auger rotatably mounted in said chamber for scraping ice from the walls of the freezing chamber and for carrying ice upwardly therethrough together with means which may include a breaker head for disintegrating the ice delivered by the auger and for compressing the ice to discharge the same in the form of discrete ice chips, which chips are of the same general character as chips of crushed ice. In operation, as the auger rotates it scrapes off ice frozen in the interior walls of the freezing cylinder in the form of thin sheets, which sheets are superimposed one upon another in layers as the ice is delivered upwardly. As the sheets are superimposed within the cylinder, water is entrapped between the layers of ice. The disintegrating means at the top of the freezing cylinder disintegrates the ice thereby breaking up the layers and permitting the entrapped water to return to the freezing cylinder. The disintegrating means also compacts and compresses the ice so as to weld the thin layers into ice chips having a thickness many times the thickness of the ice sheets as originally formed

(6) The prior United States patents relied upon by defendant at the trial to anticipate the Trow and Nelson patent or render it lacking in invention consists of the following:

| | |
|---|---|
| Johnson | 1,576,137 |
| Christensen | 1,798,725 |
| Grayson | 1,910,009 |
| Mayne | 2,426,368 |
| Lee | 2,595,588 |
| Nitsch | 2,597,515 |
| Lee | 2,648,955 |
| Smitkin | 1,970,437 |
| Kubaugh | 2,453,140 |
| Anderson | 647,354 |
| Grace et al | 858,595 |
| Renneburg | 1,005,472 |
| Severson | 1,713,719 |
| Kozak et al | 2,360,776 |
| Escher | 2,364,353 |
| Riza | 2,512,214 |
| Smith | 1,641,699 |
| Bailey | 1,867,245 |
| Fischer | 1,972,735 |
| Davis | 2,114,557 |
| Erickson et al | 2,191,344 |
| Leboeuf | 2,503,395 |
| Hanna | 2,569,812 |
| Lundell | 2,665,724 |

The prior art relied upon at the trial also included the foreign patents of:

| | |
|---|---|
| Ludke (British) | 409,499 |
| Lucas (French) | 991,491 |

---

The prior art relied upon at the trial also included as publications:

Catalog No. 749 —"The Hammond Line"—Copyright 1949 by Screw Conveyor Corp., Hammond, Indiana. Pages 39 to 45 inclusive.

Book No. 989 —(Section of Catalog 500) Original Caldwell Helicoid and Sectional-Flight Screw Conveyor. H. W. Caldwell & Sons Co., Chicago, Illinois. (Link-Belt Company, owner)—Copyright 1928. Pages 11, 59 and 63.

General Catalog No. 30 —"Elevating, Conveying and Power Transmitting Machinery", Webster Mfg. Co., Chicago, Illinois. Copyright 1906. Page 88.

"Modern Materials Handling" —by Simeon J. Koshkin, M. E., publisher—John Wiley & Sons, Inc. New York, 1932. Page 373.

The defendant also relied upon alleged prior public uses by Screw Conveyor Corp. of Hammond, Indiana, in 1944 and 1950 and by Link Belt Company of Chicago, Illinois, in 1932, 1946 and 1947.

(7.) Defendant also advanced, as showing that the Trow and Nelson structure was unsatisfactory, the subsequently issued patent to Nelson and Roberts, No. 2,825,209. The Nelson in this patent and the Nelson in the Trow and Nelson patent in suit are one and the same person.

(8) Of the prior art patents in evidence, both United States and foreign, the prior publications, and the prior public uses, none disclose the invention of the patent in suit.

(9) Of all the prior art cited by the defendant, the development by John M. Nitsch, including his ice machine and his United States patent No. 2,597,515, is the most pertinent. Nitsch developed an ice chip producing machine having an inclined freezing cylinder with a refrigeration jacket surrounding the same for freezing on the side wall thereof liquid supplied thereto and having a delivery auger which removed the layers of ice from the inside cylinder walls and carried the ice upwardly to and out of the discharge end of the cylinder where the weight of the ice extending beyond the discharge end of the cylinder caused the ice to fall.

(10) The Nitsch machine in operation was incapable of producing discrete ice chips but produced a cylinder of ice that was mostly water.

(11) The addition of a disintegrating means by Trow and Nelson to the apparatus of Nitsch produced an ice chip producing machine capable of producing discrete ice chips.

(12) The steps taken by Trow and Nelson converted failure into success and constitute invention.

(13). The Nelson and Roberts patent does not show that the structure of the patent in suit was unsatisfactory.

(14) Trow and Nelson are the original, joint and first inventors of the invention of the United States Letters Patent No. 2,753,694. The invention of United States Letters Patent No. 2,753,694 was not known or used by others in this country before the invention thereof by Trow and Nelson, was not patented or described in this country or any foreign country before the invention thereof by Trow and Nelson, or for more than one year before the filing of the application for patent thereon, and was not in public use or on sale before the invention thereof by Trow and Nelson, or for more than one year before the filing of the application for patent thereon.

(15) Since the filing of this suit, the defendant had in its pleadings cited seventy-five United States and foreign patents as prior art. However, prior to the trial, defendant reduced this number of patents to twenty-six. Of all the patents cited, Spiegl 2,259,841, Topping 2,556,510, Watt 2,571,506, Lee 2,597,008, and Nitsch 2,597,515, were cited by the Examiner during the prosecution of the Trow and Nelson patent application. Of the remaining prior art patents, it is reasonable to conclude that the patent Examiner considered these patents within the field of his search and discarded them as inapplicable.

(16) The specification of the Trow and Nelson patent describes the structure and mode of operation of the ice chip producing machine of the Trow and Nelson invention in language that is clear and definite. The claims and the specification state the invention in terms of structure and function and explain the interaction of the parts.

(17) The Trow and Nelson patent describes the invention thereof in such full, clear and exact terms as to enable any person skilled in the art or science to which it pertains or with which it is most clearly connected, to make, employ or use the same, and the claims thereof point out and distinctly claim Trow and Nelson's invention.

(18) There was no fraud perpetrated on the Patent Office by the filing of the application which resulted in the patent in suit nor in any of the proceedings during the prosecution of the application.

(19) The defendant manufactured and sold, since the issuance of the Trow and Nelson patent and prior to the filing of this action, an ice chip producing machine referred to as Model 1. Plaintiff's Exhibit 1 is a catalog showing the construction, and plaintiff's Exhibit 5 is a physical embodiment of the breaker head used in Model 1.

(20) The defendant manufactured and sold an ice chip producing machine, subsequent to the issuance of the Trow and Nelson patent, referred to as Model 3. Plaintiff's Exhibit 3 is a drawing of Model 3 and plaintiff's Exhibit 6 is a physical embodiment of a breaker head used in Model 3.

(21) The defendant manufactured and sold an ice chip producing machine, subsequent to the issuance of the Trow and Nelson patent, referred to as Model 4. Plaintiff's Exhibits 4a through 4e are drawings of Model 4, and plaintiff's Exhibit 7 is a physical embodiment of a breaker head used in Model 4.

(22) The defendant manufactured and sold an ice chip producing machine, subsequent to the issuance of the Trow and Nelson patent, referred to as Model 5. Plaintiff's Exhibit 8, a stipulation in regard to formal matters, contains Exhibits F and G which are drawings of Model 5, and plaintiff's Exhibit 10 is a physical embodiment of the breaker head used in Model 5.

(23) Models 1, 3 and 4 of defendant's ice chip producing machines have stationary breaker heads which act as a bushing member surrounding the upper portion of the auger shaft and tightly fitting within the upper portion of the freezing cylinder, the lower end of the breaker head having a generally beveled surface which extends downwardly behind a discharge opening in the side of the freezing cylinder and terminates substantially adjacent the upper end of the auger.

(24) Model 5 ice chip producing machine has a breaker head secured to and rotating with the auger, with the breaker head having generally radially, outwardly extending knife-like edges positioned immediately adjacent to the end of the flights of the auger and within the confines of the freezing cylinder.

(25) Defendant's Models 1, 3, 4 and 5 are each ice chip producing machines having a cylindrical freezing chamber, with refrigeration means surrounding the major portion of the freezing chamber and having liquid supply means for supplying liquid to be frozen in the freezing chamber and including an auger rotatably mounted in the chamber for scraping ice from the walls of the freezing chamber and for carrying ice upwardly therethrough together with means in the form of a breaker head for disintegrating the ice delivered by the auger and for compressing the ice to discharge the same in the form of discrete ice chips. In each of the models 1, 3, 4, and 5, as the auger rotates while the machines are in operation, it scrapes off ice frozen on the interior walls of the freezing cylinder in the form of thin sheets, which sheets are superimposed one upon another in layers as the ice is delivered upwardly. As the sheets are superimposed within the cylinder water is entrapped between the layers of ice. The breaker head at the top of the freezing cylinder disintegrates the ice thereby breaking up the layers and permitting the entrapped water to return to the freezing cylinder. The breaker head also compacts and compresses the ice so as to weld the thin layers into ice chips having a thickness many times the thickness of the ice sheets as originally formed.

(26) Defendant's Models 1, 3, 4, and 5 respond to the terms of claims of the Trow and Nelson patent from the standpoint of structure and function and from the standpoint of the interaction of the parts.

(27) Defendant's ice chip producing machine Model 1 incorporates each of the elements of claim 2 of the patent in suit.

(28) Defendant's ice chip producing machine Model 3 incorporates each of the elements of claims 2 and 5 of the patent in suit.

(29) Defendant's ice chip producing machine Model 4 incorporates each of the elements of claims 2 through 7 of the patent in suit.

(30) Defendant's ice chip producing machine Model 5 incorporates each of the elements of claim 7 of the patent in suit.

(31) Neither the Trow and Nelson patent claims, nor the prior art, limit the shape of the disintegrating means to that of the specific breaker head shown in the drawings of the Trow and Nelson patent. The breaker heads of defendant's Models 1, 3, 4, and 5 act in the same fashion and perform the same function as the breaker head disclosed and claimed in the Trow and Nelson patent.

### Conclusions of Law

(1) This Court has jurisdiction of the parties.

(2) This Court has jurisdiction of the cause of action alleged in the Complaint under the Patent Laws of the United States.

(3) The Trow and Nelson patent in suit issued to Queen Stove Works, Inc., as assignee of Trow and Nelson, and was subsequently assigned to plaintiff, who still is the owner thereof together with all rights to damages for infringement thereof.

(4) The prior art offered in evidence by the defendant does not anticipate the claims of the Trow and Nelson patent.

(5) The claims of the Trow and Nelson patent describe a structure which involves invention over the prior art.

(6) The Trow and Nelson patent in suit and the claims thereof are good and valid in law.

(7) The claims of the Trow and Nelson patent in suit express the novel concept constituting the gist of the Trow and Nelson invention and such concepts are set forth in terms of a combination of elements and their cooperative physical and functional relationship which contribute to the new result.

(8) Trow and Nelson are the first inventors of the subject matter claimed in the Trow and Nelson patent in suit.

(9) Defendant in its manufacture and sale of ice chip producing machines Model 1 has infringed claim 2 of the Trow and Nelson patent.

(10) Defendant in its manufacture and sale of ice chip producing machines Model 3 has infringed claims 2 and 5 of the Trow and Nelson patent.

(11) Defendant in its manufacture and sale of ice chip producing machines Model 4 has infringed claims 2 through 7 of the Trow and Nelson patent.

(12) Defendant in its manufacture and sale of ice chip producing machines Model 5 has infringed claim 7 of the Trow and Nelson patent.

(13) The claims of the Trow and Nelson patent read literally upon the ice chip producing machines manufactured and sold by defendant, which machines embody the invention defined therein.

(14) The proceedings in the Patent Office by reason of which said Trow and Nelson patent issued and the prior art before the Court do not estop plaintiff from asserting a scope for the claims of the Trow and Nelson patent broad enough to encompass the ice chip producing machines manufactured by defendant.

(15) The plaintiff is entitled to an injunction against further infringement of the Trow and Nelson patent in suit.

### Findings of Fact In Support of Judgment Dismissing Defendant's Counterclaim

The court has jurisdiction over the parties and the subject matter of the counterclaim.

(1) Plaintiff is a corporation organized under the laws of the State of Michigan having its principal office and place of business at Ann Arbor, Michigan.

(2) Defendant is a corporation organized under the laws of the State of Illinois having its principal office and place of business at Chicago, Illinois, within the Northern District of Illinois, Eastern Division.

(3) Plaintiff brought this civil action in good faith to submit to the court for

determination plaintiff's charge that defendant infringed United States Letters Patent No. 2,753,694 by manufacturing and selling ice chip producing machines. Plaintiff's purpose in filing and maintaining this civil action was to enforce its patent.

(4) There is no evidence showing any acts of plaintiff which would bring plaintiff before this court with unclean hands.

(5) There is no evidence before this court that as a result of the advertisements published by plaintiff simply pointing out to the trade the filing of this suit, plaintiff has misled and confused the trade and prospective customers of the defendant, causing said trade and customers to refrain from purchasing defendant's ice chip producing machines.

(6) There is no evidence before this court that Trow and Nelson, the inventors of the patent in suit, are not in fact, the inventors of the ice chip producing machines disclosed in the Trow and Nelson patent.

(7) There is no evidence before this court of any attempt on the part of the plaintiff or its employees to discredit the ice chip producing machines manufactured and sold by the defendant.

(8) The defendant has not proved it has suffered any damage by reason of any acts of plaintiff alleged in the counterclaim to be unlawful.

Conclusions of Law

(1) This Court has jurisdiction over the parties and the subject matter of the counterclaim.

(2) Plaintiff had good cause to file and maintain the civil action brought in the complaint filed herein for infringement of the Trow and Nelson patent and such action was filed and maintained by plaintiff in good faith.

(3) The plaintiff is not before this Court with unclean hands.

(4) Defendant has not been damaged by any actions of the plaintiff.

(5) The counterclaim should be dismissed.