**KING–SEELEY THERMOS COMPANY**

v.

**MILLERSVILLE MANUFACTURING COMPANY.**

Civ. No. 4899.

United States District Court
M. D. Tennessee,
Nashville Division.

July 9, 1968.
As Amended July 11, 1968.

248

Thomas Wardlaw Steele, Gullett, Steele, Sanford & White, Nashville, Tenn., Don K. Harness, Harness, Dickey & Pierce, Detroit, Mich., for plaintiff.

Jordan Stokes, III, Nashville, Tenn., McNeill Stokes, Atlanta, Ga., and Harrington A. Lackey, Nashville, Tenn., for defendant.

## MEMORANDUM

FRANK GRAY, Jr., District Judge.

This patent infringement action was instituted pursuant to 35 U.S.C. § 271 by King-Seeley Thermos Company (hereafter King-Seeley), the owner by assignment of U. S. Letters Patent 2,753,694 (hereafter patent 694). The crux of the complaint is that Millersville Manufacturing Company, by the manufacture and sale of its "Sno-Flaker" ice producing machines, has infringed claim 4 of patent 694. Jurisdiction and venue are properly asserted under 28 U.S.C. §§ 1338(a) and 1400(b), respectively.

The invention embodied in patent 694, as well as the defendant's machine, is designed to produce commercially usable flake or chip ice, that is, discrete ice chips of sufficiently small liquid content to prevent coalescence when stored under normal conditions. The components and mode of operation of the patent 694 machine are as follows:[1]

"[It] consist[s] of a vertical, elongated, cylindrical freezing compartment which is surrounded by a freezing jacket. Water is supplied to the cylinder through an inlet tube near the bottom, and is maintained at a uniform level. Within the freezing compartment is a rotatable auger with its blades closely fitted to the cylinder wall. The auger is rotated by a motor at a speed which permits ice to be frozen on the cylinder wall. The thin layer of ice is then scraped from the cylinder wall by the action of the auger blades, and conveyed upward as a hollow column of ice. When the ice reaches the top of the cylinder it is saturated with water trapped between the thin layers, and is unusable 'slush ice.'

"The upper end of the cylinder is closed, with a stationary solid bronze unit extending downward within the cylinder to a point above the upper portions of the auger. This unit is referred to as a 'breaker-head' * * * the lower end having a beveled surface for peeling the ice from the auger and breaking and deflecting the column of slush ice and changing its direction as it is conveyed upward. Inside the breaker-head is a stainless steel 'bushing' or bearing, to keep the upward end of the auger shaft steady."

Defendant denies liability on the following grounds: first, that claim 4 of patent 694 is invalid both as reading on prior art and as obvious at the time of the invention to a person having ordinary skill in the art and, secondly, that even if valid, claim 4 is not infringed by the defendant's machine. Accordingly, the determinative questions before the court are the legal issue of the validity of claim 4 and, if this is resolved affirmatively, the factual issue of infringement.

## I

■■ Under 35 U.S.C. § 282, a regularly issued patent is presumed valid and a party asserting the invalidity thereof has the burden of establishing his assertion by clear and convincing evidence. Mumm v. Jacob E. Decker & Sons, 301 U.S. 168, 57 S.Ct. 675, 81 L.Ed. 983 (1937). Accord, Simplicity Manufacturing Co. v. Quick Manufacturing, Inc., 355 F.2d 1012 (6th Cir. 1966); Tillotson Manufacturing Co. v. Textron, Inc., Homelite, 337 F.2d 833 (6th Cir. 1964). In the instant action, the force of this presumption and the corresponding weight of the defendant's burden of establishing invalidity are increased by the fact that claim 4 of the patent in suit has been held valid by the Seventh and Tenth Circuit Courts of Appeals. King-Seeley Thermos Co. v. Tastee Freez

---

1. King-Seeley Thermos Company v. Refrigerated Dispensers, Inc., 354 F.2d 533, 535 (10th Cir. 1965).

Industries, Inc., 357 F.2d 875 (7th Cir. 1966), cert. denied, 385 U.S. 817, 87 S.Ct. 38, 17 L.Ed.2d 56 (1966); King-Seeley Thermos Co. v. Refrigerated Dispensers, Inc., 354 F.2d 533 (10th Cir. 1965).[2] While these findings are not binding upon this court, they are to be considered as strongly persuasive in the absence of any convincing new evidence of invalidity. American Photocopy Equipment Co. v. Rovico, Inc., 257 F.Supp. 192 (N.D.Ill. 1966). See Cold Metal Process Co. v. E. W. Bliss Co., 285 F.2d 231 (6th Cir. 1960); Cold Metal Process Co. v. Republic Steel Corp., 233 F.2d 828 (6th Cir. 1956).

■ Upon consideration the court finds that the defendant has not introduced any new evidence which substantially contradicts the findings of validity in the *Tastee Freez Industries* and *Refrigerated Dispensers* decisions, *supra,* or which is of sufficient strength to persuade the court of the invalidity of claim 4. The dispositive issue herein, therefore, is whether the flake ice machines produced by the defendant infringe claim 4 of the 694 patent.

II

■ One fundamental premise of the law of patent infringement is that the patentee's claim measures the grant. As stated by the Supreme Court in McClain v. Ortmayer, 141 U.S. 419, 425, 12 S.Ct. 76, 78, 35 L.Ed. 800 (1891), "nothing can be held to be an infringement which does not fall within the terms the patentee has himself chosen to express his invention." Accordingly, the standard against which defendant's machine is to be judged in ascertaining infringement is the following language of claim 4:

1. An ice chip producing machine comprising an elongated freezing chamber having an open end,

2. means for supplying water to the inside of said freezing chamber,

3. means for cooling at least a portion of said freezing chamber to freeze ice on the inside surface thereof,

4. an ice conveying auger rotably mounted in the freezing chamber with its spiral edge disposed in closely spaced relation to the inside wall of said chamber,

5. means for constantly rotating the auger to cause said spiral edge to shear off ice frozen on the inside wall of the chamber constantly to deliver ice to said open end of the freezing chamber,

6. and an outwardly inclined ice disintegrating and removing member positioned in said open end of the chamber and provided with an ice peeling moldboard-like surface positioned to engage ice carried by the auger, said constant rotation of the auger serving positively and constantly to convey ice to and force it against said moldboard-like surface to break up and positively remove ice from the auger and discharge it as discrete ice chips.

Plaintiff's proof established clearly that what its machine actually does is to freeze into slush ice the water going into the freezing chamber, convey the slush ice by means of the rotating auger against a breaker-head which compresses and dewaters the slush ice, the dewatered ice then being broken up and removed into a storage bin.

As was pointed out in *Refrigerated Dispensers, supra* (354 F.2d at p. 537): "We think that Claim 4 of the 694 Patent clearly discloses a process of making a column of slush ice, or soft ice, in a freezing compartment, and then compressing it against the breaker-head, by means of an auger, for disintegration and removal of excess water; this is new and novel. The breaker-head serves no other purpose. Furthermore, even though the patent claim did not specifi-

2. Claim 4 of the patent in suit was also held valid in the unreported decision of King-Seeley Thermos Co. v. Ice-O-Matic, Inc., Civil No. 66–C–58 (D.Col., July 31, 1967).

cally use the terms 'slush ice', and 'compression', the patentee is entitled to all the benefits and advantages of his patent."

The function of the breaker-head, or "ice peeling surface" of plaintiff's machine was described by the court in *Tastee Freez, supra*, (357 F.2d at p. 878) as follows: "As the rising column of ice is forced up against the ice peeling surface, the thin, wet layers of ice are compressed, excess water trapped between the layers of ice is squeezed out, and the ice is delivered to a discharge opening in a dry condition. This dryness of the ice is critical, for without it, the ice and machine would suffer the same problems which occurred in the operation of the Nitsch ice machine; and the ice made would not be acceptable commercially." At p. 880, the court said: "While the '694 specifications do not describe the compressing function, the structure and operation of the machine which the patent discloses do result in the compressing function. A patentee is entitled to all the benefits and advantages of his invention whether or not they are mentioned in the patent."

In similar manner, the District Court of Colorado, in King-Seeley Thermos Company v. Ice-O-Matic, Inc., and Mile High Equipment Company, in its unreported opinion dated July 31, 1967, a copy of which was made an exhibit herein, said, as item number 10 in the Findings of Fact: "It is the combination covered by claim 4 of the '694 patent and characterized by an obstructing and deflecting structure in the open end of the freezing cylinder against which the slushy column of ice is conveyed by the rotating auger so that the ice is compressed, dewatered, and broken up or disintegrated into chips or flakes which are discharged out through an opening in the side of the cylinder which distinguishes it from the prior art relied upon by Defendants * * *"

In each of the three cases above referred to, the courts found that the accused machines, by the use of some type of breaker-head, accomplished the compressing and dewatering function performed by the "moldboard-like surface" of plaintiff's machine and therefore infringed.

As Appendix A to this opinion, there appears a diagram of the rotating auger assembly of plaintiff's machine, which diagram was introduced into the record as an exhibit by plaintiff. As Appendix B, there appears a diagram of the accused machine of defendant, which diagram was also introduced into the record as an exhibit by the plaintiff.

In each of the three cases in which the validity of this patent has been sustained, the courts discussed at considerable length the prior art, particularly the patent issued to John M. Nitsch, number 2,597,515. The defendants in each of those cases, as did the defendant here, cited this patent in support of their allegations that patent 694 was invalid. It should be noted that the Nitsch patent was acquired by plaintiff herein prior to its obtaining patent 694.

The claim in Nitsch was:

"In an apparatus for making ice chips, an inclined cylindrical casing forming a water receiving freezing chamber, said casing having a closed lower end and being formed fully open at its upper end; a refrigerating jacket surrounding said casing and arranged to chill the wall thereof to an extent effective for the continuous formation of a film of ice upon said wall; means for supplying water to the casing to a controlled level spaced from the upper end thereof; a feed screw rotating within the casing, said screw including an elongated shaft and a spiral blade on the shaft having a cutting edge spaced closely from the casing wall, to effect a continuous scraping of said film from the casing wall and an advancement of the scrapings toward the open upper end of the casing; a supporting bracket for the upper end of the casing formed with a bearing spaced a substantial distance beyond and above the open end of the casing and receiving one end of the feed screw shaft, said bracket includ-

ing a connecting member paralleling and arranged above said shaft, said connecting member extending from the bearing to the casing and supporting said open end of the casing, the connecting member being arranged wholly clear of and above the space between the bearing and casing out of the path of a spiral piece of ice fed upwardly through the open upper end of the casing; and a receiving tray spaced a substantial distance below the open upper end of the casing, said bracket being so formed and arranged relative to the casing and tray as to be wholly clear of the space therebetween, for free fall of a broken spiral piece of ice fed through the open upper end of the casing to the tray, whereby to forcibly dash said broken piece against the tray surface."

It will be noted that the Nitsch machine used a freezing chamber and a rotating auger, referred to in the claim as a "feed screw rotating within the casing," but that the upper end was fully open. All of the courts found that it was the combination of the chamber, the auger and the breaker-head, which was new and novel in patent 694, and that without the breaker-head plaintiff's machine made only slush ice.

Superficially there are resemblances between the plaintiff's machine and the accused machine. Each has a freezing chamber and a rotating auger. Defendant's machine incorporates an inverted frustum shaped "deflector cap" located at the open end of the freezing chamber in much the same manner as the breaker-head described in the sixth element of claim 4. Both achieve the same result, that is, the production of commercially usable flake ice.

The principal physical difference in the machines, a difference which the court finds controlling, is the shape and function of the rotating auger in defendant's machine. As shown by the diagram on Appendix B, the auger of defendant's machine is tapered, that is, the radii of the root and of the blades of the auger increase and decrease, respectively, from the bottom to the top of the freezing chamber.

In defense to the allegation of infringement defendant herein contended that the column of ice formed along the freezing chamber wall of its machine is compressed and dewatered by the constrictive action of the tapered auger as it conveys the ice upward through the cylinder; further, that the primary function of the deflector cap is to bend or force the rising column of ice laterally away from the freezing chamber and through a series of thin, vertical cutter teeth arranged circumferentially about the top of the cylinder, and that any compression resulting from the contact of the rising column of ice with the deflector cap is negligible insofar as the production of commercially usable ice chips is concerned.

Plaintiff contended, although admitting that the tapered shape of defendant's auger results in some compression within the chamber, that the defendant's deflector cap is a functional equivalent of its breaker-head in that the additional compression resulting from the column of ice being forced against the deflector cap is required to render the ice commercially usable. Additionally, plaintiff contended that defendant's tapered auger is properly characterized as, or is the functional equivalent of, "an ice peeling moldboard-like surface" within the purview of the sixth element of claim 4.

The court finds that a preponderance of the evidence adduced supports defendant's contention that its machine, without a deflector cap, will produce chip ice of a commercially usable quality. Defendant's expert testimony was to the effect that tests made on defendant's machine without the deflector cap showed that it would produce commercially usable ice; further, that there was no noticeable difference between the dryness of the chips produced with the deflector cap removed or in place.

The expert witness who testified for plaintiff stated that in a test which he made in Chicago, using one of defend-

ant's machines which had been purchased by plaintiff, the machine did produce commercially usable ice without the deflector cap attached. He stated, however, that with the deflector cap attached the chips produced showed that there had been substantial additional dewatering. During the trial defendant demonstrated one of its machines to the court, and it produced commercially usable ice without the deflector cap. However, plaintiff's demonstration of a defendant's machine, assertedly the same one used in the Chicago test, produced what plaintiff's expert characterized as ice which was not commercially usable because of excessive water content.

■ The court has considered this partially contradictory factual evidence in arriving at its decision, previously expressed, that defendant's contention is supported by a preponderance of the evidence. The second question raised by plaintiff that the defendant's tapered auger is properly characterized as, or is a functional equivalent of, "an ice peeling moldboard-like surface" is considered to be without merit. It is obvious that an auger, tapered or otherwise, is not embraced within the conventional meaning of "moldboard-like surface."

A plow moldboard, by all definitions of which the court is aware, must have a concave or at least straight surface in order to lift and turn or deflect soil thrust against it by the plowshare. This lifting and turning function would be precluded if the moldboard surface were intersected or interrupted by a series of approximately perpendicular blades or planes as is the case with the flights of an auger.

■ Although it is axiomatic that the claim measures the protection afforded by a patent, McClain v. Ortmayer, *supra*, under the doctrine of equivalents a specific claim may be construed so as to embrace more than is expressly stated therein if an equivalent has been substi-

tuted in the allegedly infringing device for an essential element in the patented invention. Koykka, Infringement of Patents, 42 F.R.D. 43, 56 (1968). Thus, "if two devices do the same work in substantially the same way, and accomplish substantially the same result, they are the same, even though they differ in name, form or shape." Graver Tank & Manufacturing Co., Inc. v. Linde Air Products Co., 339 U.S. 605, 608, 70 S.Ct. 854, 856, 94 L.Ed. 1097 (1950). See Nickerson v. Bearfoot Sole Co., 311 F.2d 858 (6th Cir. 1962); National Latex Products Co. v. Sun Rubber Co., 274 F.2d 224 (6th Cir. 1960), cert. denied, 362 U.S. 989, 80 S.Ct. 1078, 4 L.Ed.2d 1022 (1960); Swan Carburetor Co. v. Chrysler Corp., 130 F.2d 391 (6th Cir. 1942). However, a change in the method of producing a given result will not amount to an infringing equivalent within the rationale of this doctrine if it entails a change in principle, that is, a principle different from that of the patented device. See Westinghouse v. Boyden Power Brake Co., 170 U.S. 537, 18 S.Ct. 707, 42 L.Ed. 1136 (1898). In short, a significantly different mode of operation may, if predicated upon an equally different principle, preclude an infringing equivalency of means, notwithstanding an identical result.

Upon consideration, the court finds that the conveying and compressing functions simultaneously performed by defendant's tapered auger reflect not only a change in the means of producing commercially usable ice, but a change in the principle of the 694 patent as well. A finding of infringement based upon equivalency, therefore, is precluded.

Accordingly, it is the opinion of the court that the defendant's flake ice producing machine does not infringe the invention embodied in the 694 patent.

The foregoing constitutes the court's findings of fact and conclusions of law herein. The clerk will enter judgment for the defendant.

A P P E N D I X   A

July 10. 1956          F. A. TROW ET AL          2,753,694
ICE DISINTEGRATING AND CHIP DELIVERING
SPIRAL ICE CHIP PRODUCING MACHINE
Filed Sept. 17, 1952                    2 Sheets—Sheet 2

FIG. 3

FIG. 4

INVENTORS
FAY A. TROW
MARCUS NELSON
BY Williamson,
Williamson, Schroeder,
& Adams
ATTORNEYS

APPENDIX   B

