**PARK–OHIO INDUSTRIES, INC. and Growth International Industries Corp., Plaintiffs-Appellants and Cross-Appellees,**

v.

**LETICA CORPORATION, Defendant-Appellee and Cross-Appellant.**

**Nos. 77–1494, 77–1495.**

United States Court of Appeals, Sixth Circuit.

Argued Dec. 12, 1979.

Decided March 28, 1980.

Squire, Sanders & Dempsey, D. Peter Hochberg, Cleveland, Ohio, for plaintiffs-appellants and cross-appellees.

Thomas N. Young, Krass & Young, Troy, Mich., for defendant-appellee and cross-appellant.

Before LIVELY, KEITH and BROWN, Circuit Judges.

BAILEY BROWN, Circuit Judge.

Appellants, Park-Ohio Industries, Inc., and its subsidiary Growth International Industries Corp. ("Park-Ohio"), filed this action in the United States District Court for the Eastern District of Michigan, Southern Division, alleging that defendant-appellee Letica Corporation ("Letica") had infringed Park-Ohio's patented design for securing plastic lids or closures on plastic pails or buckets used as containers for shipping materials by rail or truck. Letica answered and counterclaimed, alleging invalidity of the patent and noninfringement, and also sought an award of attorney's fees. The district court (Hon. John Feikens) held that the patent is invalid in light of the prior art and that Letica's product in any event did not infringe the patented design. The court, however, refused to award attorney's fees to Letica.

We agree with the district court that the patent-in-suit is invalid. We therefore have no need to deal with the infringement issue. In all other respects, including the denial of attorney's fees, the decision of the district court is affirmed.

## FACTS

Park-Ohio is a manufacturer of plastic containers used for shipping chemicals, paints and other commodities by truck and rail. It is the owner of the "Yates patent," the patent-in-suit.[1] This patent is a design for fastening plastic lids to the tops of plastic shipping containers or pails. The lid (closure) is circular with an inverted U-shaped channel along its perimeter which fits over the top edge of the pail, said edge having an outside annular ridge or bead. The two sides of the inverted U-shaped channel are referred to as the "inner leg" and "outer leg." The inner leg rests against the inside upper wall of the pail, while the outer leg provides the foundation for the locking mechanism. On the inside of the inverted U-shaped channel, as part of the outer leg, is a raised surface or bead, the upper side of which is "substantially perpendicular" to the outer leg and which presents a flat abutment surface that snaps tightly under the annular ridge at the top edge of the pail when the lid is pressed down and over it. This raised surface or bead is above the lower end of the outer leg. The lower edge of the outer leg is free and is thickened to give the lid "hoop strength," so that the lid hugs the pail. The free end of the outer leg is continuous, and above the continuous free end on the outer leg are apertures (holes) approximately every four inches. These holes are so placed to aid in cutting through the outer leg with a knife, thus creating tabs which can then be raised upwardly to disengage the locking mechanism and remove the lid. Since the bead on the inner side of the outer leg is above the lower free end thereof, a tool (such as a knife) receiving recess is thereby created and allows insertion

---

1. United States Patent No. 3,770,156 issued November 6, 1973 to George Yates, Jr. The earliest date of conception for this design is September 1, 1969.

therein and cutting upwardly to the apertures to create the aforesaid tabs. The primary advantage of the Yates design, according to the teaching of the patent, is that it is "tamper proof" in that the lid cannot be removed without severing the outer leg and lifting the then created tabs; and once such severing takes place, it is obvious that the lid has been removed.

## THE PRIOR ART

Park-Ohio alleged infringement of Claim 2 of the Yates patent and its dependent claims, 3, 5, 6, and 9. These claims specifically set forth the lid locking mechanism previously described.[2] As a defense to the infringement action, Letica contended that the Yates patent was invalid in light of the prior art. The district court held that the Yates patent was substantially indistinguishable from earlier patents issued to R. V. Bardell[3] and R. S. Hurtt.[4]

 The prior art Bardell patent application was filed on December 3, 1968 and granted on July 7, 1970. It too provided for an inverted U-shaped channel in its lid with locking element molded to the outer leg. The Bardell abutment was rounded, however, in contrast to the "essentially flat and substantially perpendicular" abutment of the Yates patent. Although Park-Ohio claims that this difference is one of the inventive features of the Yates patent, this perpendicular locking abutment was revealed by the prior art (Hurtt patent) and, further, it would in any event have been obvious, as the district judge found, that a flat surface would produce a more effective locking device with the bead on the rim of the pail. A patent may not be obtained where the differences between the invention and the prior art would have been obvious at the time the invention was made to a person having ordinary skill in the art. 35 U.S.C. § 103. We therefore hold that the flat and perpendicular locking surface was anticipated by Hurtt and in any event was obvious to one skilled in the art.

Another issue is presented by Park-Ohio's contention that the Yates patent is distin-

2. Claim 2 provides:

A tamper proof closure adapted for application to an open end container body, the open end container body comprising a cylindrical side wall portion, a bottom wall portion formed internally therewith, and said side wall portion having an annular ridge projection extending outwardly around the periphery of the open end, said annular ridge projection having the lower disposed surface substantially perpendicular to the cylindrical side wall portion, said tamper proof closure comprising:
a center section:
a peripheral channel having an inverted generally U-shaped cross section and including a base portion from which an inner leg and a flexible outer leg depend, with the lower end of the outer leg being free, the peripheral channel being formed integrally with the center section:
a projecting bead on the outer leg and extending toward the inner leg, the bead being spaced apart from the free end of the outer leg to form an annular tool receiving recess below said bead and around the periphery of the free end of the outer leg, said bead comprising a cam follower surface and an abutment surface, said abutment surface being essentially flat and substantially perpendicular to the outer leg and said cam follower surface being formed at an angle to said outer leg:
a plurality of apertures being provided in the outer leg about the periphery thereof, with the outer leg being continuous along its free end: and
the continuous free end of the outer leg being severable to form, in conjunction with the plurality of apertures, a plurality of pivotable tabs:
sealing means positioned on the lower surface of said base portion of said peripheral channel, said sealing means for sealably engaging with the upper surface of the periphery of the open end of the container body to form an air and liquid tight seal,
whereby the open end of the cylindrical side wall portion of the container body is receivable between the inner and outer legs and the lower disposed surface of the annular ridge projection, is lockingly engaged by the abutment surface on the projecting bead and whereby a tool may be inserted into said tool receiving recess to sever said pivotable tabs to remove said closure.

3. United States Patent No. 3,519,163 issued July 7, 1970 to R. V. Bardell.

4. United States Patent No. 3,474,928 issued October 28, 1969 to R. S. Hurtt.

guishable from Bardell because of its lid removal design. As previously noted, the Yates design calls for a series of apertures in the outer leg so that a knife or other tool can be inserted into them and then forced down, sectioning the continuous outer leg into pivotable tabs, which can then be lifted to remove the lid. The Yates patent also teaches, as a preferred method of removing the lid, that the tool receiving recess at the free end of the outer leg allows the continuous free end to be cut upwardly, from the inside out, to the apertures above, thus creating the tabs, and without risk of scratching or puncturing the pail. The file wrapper history shows that the patent application was approved upon the pointing out by counsel of the tool receiving recess.

Although the Bardell patent employs a substantially identical locking system, the removal procedure is somewhat different. Bardell discloses the use of four triangular grooves or, alternatively, perforated lines (tear lines) running from the free end of the outer leg to a point above the level of the abutment. The lower inner edge of the outer leg is undercut so that a screwdriver or other tool may be wedged therein to break the tear lines, thereby sectioning the outer leg into pivotable tabs. The Bardell patent also disclosed, as stated, that the *grooved* tear lines could be replaced with *perforated* tear lines. The district court reasoned that the apertures (holes) employed in Yates' design were functionally equivalent to the perforations (holes) used in Bardell's patent and that, therefore, the Yates patent embraced a design already anticipated by Bardell. We find no fault in the district court's reasoning in this regard. It is also worth noting that the lid manufactured by Park-Ohio, pursuant to the Yates design, has elongated slots approximately ⁵⁄₁₆″ long. The slot therefore resembles the perforated or grooved tear lines of Bardell.[5] For these reasons, we cannot say

that the district judge erred in holding that the Yates apertures were already disclosed by the Bardell patent, nor can we say that the tool receiving recess also was not disclosed by Bardell.

Park-Ohio now appears to urge that this focus in the district court on apertures, perforations and holes diverted attention from what it now considers to be its primary contention which is that the "continuous free end" of the outer leg was the inventive feature of the Yates patent, distinguishing it from Bardell's design, which, Park-Ohio contends, did not have a continuous free end. As described previously, the Yates design contemplated the use of a continuous outer leg consisting of thickened plastic at the lower edge. Ostensibly, this feature gave "hoop strength" to the outer leg, ensuring that the locking system did not disengage during shipping. In Bardell, the free end is likewise continuous, or substantially continuous, although there are tear lines, as indicated, to aid the removal of the lid. Therefore, while the Yates design may provide for more hoop strength, it does not deviate significantly from the principle employed in Bardell's design.

## PRESUMPTION OF VALIDITY, ESTOPPEL, AND COMMERCIAL SUCCESS

■ Park-Ohio contends that the Yates patent is entitled to a presumption of validity and that Letica did not overcome that presumption in the district court. 35 U.S.C. § 282. We believe, however, that the failure of the examiner, Hall, who was also the examiner for the Bardell patent, to cite such highly relevant prior art as Bardell and Hurtt in the patent file history seriously weakens this presumption.[6] *See Reynolds Metals Co. v. Acorn Bldg. Components, Inc.*, 548 F.2d 155, 160 (6th Cir. 1977); *Bolkcom v. Carborundum Co.*, 523 F.2d 492, 498 (6th Cir.), *cert. denied*, 425 U.S. 951, 96 S.Ct.

---

5. *See* Plaintiff's Exhibit No. 55.

6. It should also be noted that the same attorney who prosecuted the Bardell patent also prosecuted the Yates patent in the patent office and did not cite Bardell in the Yates application. The Bardell patent is also the property of Park-Ohio.

1725, 48 L.Ed.2d 194 (1975); *Schnadig Corp. v. Gaines Mfg. Co.*, 494 F.2d 383, 390 (6th Cir. 1974).

■ Park-Ohio also argues that Letica should be bound by a prior "admission" that the Yates design was nonobvious. Specifically, Park-Ohio argues that because Mr. Letica applied, although unsuccessfully, for a patent on the accused closures, which in Park-Ohio's opinion are identical to the Yates closures, this filing and prosecution of a patent constitutes an admission that the "Yates-Letica" closures were nonobvious even in light of Bardell. In support of this contention appellants cite the case of *Winslow Mfg. Co. v. Peerless Gauge Co.*, 202 F.Supp. 931, 937 (N.D.Ohio 1958), a case which we find inapposite. The *Winslow* case did not hold against defendant because of its earlier representations at the Patent Office. The court merely noted that it was deciding to uphold the validity of the patent-in-suit on the same rationale used by defendant when it was attempting to persuade the Patent Office of its invention's nonobviousness. The court therefore decided the issue of patent validity on the basis of a comparison between the invention and the prior art, and not on the basis of some form of estoppel as urged by appellants in the instant case. We therefore hold that the Letica application and prosecution of a patent does not constitute any type of admission of or estoppel as to the nonobviousness of the Yates design.

■ Park-Ohio also argues that the commercial success of its product constitutes a strong indication of the validity of the patent-in-suit. The Supreme Court, however, has recognized that commercial success is only a secondary consideration in determining the validity of a patent. *Graham v. John Deere Co.*, 383 U.S. 1, 17–18, 86 S.Ct. 684, 693–694, 15 L.Ed.2d 545 (1966). Moreover, the district court found, which is not clearly wrong, that Park-Ohio's product is not covered by the claims of the Yates patent in that the abutment surface is not flat and perpendicular but angled about ten to twenty-two degrees.

We have carefully considered Park-Ohio's other contentions and find them to be without merit.

## ATTORNEY'S FEES

■ Title 35 U.S.C. § 285 provides that "[t]he court in exceptional cases may award reasonable attorney fees to the prevailing party" in patent actions. In this case, the district court did make an award of attorney's fees to defendant Letica Corporation. Then, however, it failed to make any findings of fact or conclusions of law in this regard. In so doing, the court in effect denied attorney's fees to defendant. An award of attorney's fees cannot stand absent a specific finding by the district court that brings the case within the meaning of the term "exceptional" as set forth in 35 U.S.C. § 285. *Uniflow Mfg. Co. v. King-Seeley Thermos Co.*, 428 F.2d 335, 341 (6th Cir. 1970). Defendant Letica, therefore, now cross-appeals for an award of attorney's fees.

■ The decision to award or deny attorney's fees rests within the discretion of the district court. *Hoge Warren Zimmermann Co. v. Nourse & Co.*, 293 F.2d 779 (6th Cir. 1961). After due consideration, we conclude that the district court did not abuse its discretion in not awarding attorney's fees.

The judgment below is therefore affirmed.