**Sidney O. SAMPSON, Plaintiff-Appellant,**

v.

**AMPEX CORPORATION, Defendant-Appellee.**

**No. 455, Docket 72-2168.**

United States Court of Appeals, Second Circuit.

Argued March 21, 1973.

Decided May 23, 1973.

John F. Flannery, Fitch, Even, Tabin & Luedeka, Chicago, Ill., and George I. Harris, Burke & Burke, New York City, on the brief, for defendant-appellee.

William T. Hough, Polachek, Saulsbury & Hough, New York City (Sidney O. Sampson, appellant pro se, on the brief), for plaintiff-appellant.

Before SMITH, FEINBERG and MANSFIELD, Circuit Judges.

J. JOSEPH SMITH, Circuit Judge:

This appeal presents us, apparently for the first time, with issues involving the application in patent infringement litigation of the estoppel rule of Blonder-Tongue Laboratories, Inc. v. University of Illinois Foundation, 402 U.S. 313, 91 S.Ct. 1434, 28 L.Ed.2d 788 (1971). Judge Charles M. Metzner of the Southern District of New York found the *Blonder-Tongue* doctrine applicable to this suit, and ordered Sidney O. Sampson's patent infringement complaint dismissed. For the reasons given below, we affirm.

I.

In any case involving a claim of estoppel, the prior history takes on some importance, and it is to that history which we first turn. On April 18, 1967, Sampson was granted Patent No. 3,315,041

(hereinafter '041) for "Track Selection Control Means for Magnetic Signal Recording and Reproducing Systems." In May of 1967, Sampson filed suit in the Southern District of New York against the Radio Corporation of America (RCA), charging infringement of the '041 patent. A second such suit was commenced in September of that year, naming Sony Corporation of America (Sony) as defendant. The present action, filed against Ampex Corporation (Ampex), was commenced in October of 1968.

On May 9, 1968, RCA moved for summary judgment in its suit, alleging that the '041 patent was invalid under 35 U.S.C. § 102(b) because of Sampson's own publication of the invention more than one year prior to the earliest effective application date.[1] The late Judge Edward C. McLean granted the motion in an unreported decision dated October 25, 1968, holding that the invention was disclosed in a "Five-Titled Brochure" published by Sampson in July of 1959. Sampson did not contest the fact of publication, but argued that the '041 patent was entitled to the benefit of a March 5, 1959 filing date, the date upon which he had filed Patent Application No. 797,412 ('412), which he later abandoned. Judge McLean considered this argument, which was based upon 35 U.S.C. § 120,[2] and rejected it, finding the earliest effective filing date in this case to be that of Patent Application No. 267,881, or March 18, 1963.

A motion to reargue the ·RCA case was filed on November 1, 1968. While the motion was pending, Sampson filed a notice of appeal, but on December 31, 1968 that appeal was abandoned, pursuant to a stipulation of the parties, when a settlement was reached between RCA and Sampson concerning '041 and eight other patents. On that same day, December 31, Judge McLean denied the motion to reargue.

Sampson next moved to vacate the RCA judgment. That motion was denied by Judge Ryan on January 14, 1970. We affirmed, 434 F.2d 315 (1970), holding that the failure to vacate was not an abuse of the trial court's discretion.

Meanwhile, in the Sony suit, the parties entered into a stipulation on September 26, 1968, agreeing to be bound by whatever result Judge McLean reached in the RCA case. Judge Ryan dismissed the Sony complaint, on the basis of the stipulation, after Judge McLean's RCA decision was rendered. Sampson appealed Judge Ryan's order and we affirmed, 434 F.2d 312 (1970).

In the meantime, the Ampex litigation had been stayed by the district court pending the outcome of the RCA and Sony appeals. See 434 F.2d at 314 n. 1 and id. at 317 n. 2. On May 31, 1971 while the Ampex litigation was still pending, the Supreme Court decided Blonder-Tongue, which for the first time made available the defense of estoppel in patent infringement suits. Consequently, Ampex moved to amend its answer to include an estoppel defense, based upon the RCA holding that the '041 patent was invalid. At the same time, Ampex moved for judgment on the amended

[1]. In relevant part, 35 U.S.C. § 102(b) provides:
  "A person shall be entitled to a patent unless—
  (b) the invention was patented in or described in a printed publication in this or a foreign country or in public use or on sale in this country, more than one year prior to the date of the application for patent in the United States."

[2]. 35 U.S.C. § 120 provides:
  "An application for patent for an invention disclosed in the manner provided by the first paragraph of section 112 of this title in an application previously filed in the United States by the same inventor shall have the same effect, as to such invention, as though filed on the date of the prior application, if filed before the patenting or abandonment of or termination of proceedings on the first application or on an application similarly entitled to the benefit of the filing date of the first application and if it contains or is amended to contain a specific reference to the earlier filed application."

pleadings. Judge Bonsal gave Sampson thirty days in which to amend his pleadings and supplement the record with evidence showing why the estoppel doctrine should not be imposed.

Sampson did file an amended complaint, and included a number of supplemental exhibits in the record. Both sides fully briefed the estoppel issue. On June 6, 1972, Judge Metzner granted Ampex' motion to dismiss the complaint, holding that Sampson had not pleaded sufficient facts to avoid the estoppel defense. It is from this order that Sampson now appeals.

## II.

Since Triplett v. Lowell, 297 U.S. 638, 56 S.Ct. 645, 80 L.Ed. 949 (1936), it had been the rule that a determination of patent invalidity did not act as *res judicata* in a subsequent suit involving the patentee and a different defendant. This rule, however, was overturned by *Blonder-Tongue*, which abandoned the traditional absolute reliance upon mutuality in such situations. But while the *Blonder-Tongue* court did make the plea of estoppel available to a defendant in subsequent patent litigation, it noted that the plea need not "automatically be accepted once the defendant in support of his plea identifies the issue in suit as the identical [issue] finally decided against the patentee or one of his privies in previous litigation." 402 U.S. at 333, 91 S.Ct. at 1445. Rather, the question, as in the traditional estoppel situation, is whether the patentee had both fair opportunity and incentive to litigate the validity issue in the first litigation. The Court identified such considerations as the convenience of the initial forum to the patentee, and the related issue of whether the patentee was plaintiff or defendant in the original action as bearing upon the question of "whether a patentee has had a full and fair chance to litigate the validity of his patent in an earlier case." Moreover, the Court noted that the estoppel doctrine should not be applied where

"the opinions filed by the District Court and the reviewing court, if any, indicate that the prior case was one of those relatively rare instances where the courts wholly failed to grasp the technical subject matter and issues in suit. . . ." *Id.*

But, in the end, no single "automatic formula" was seen applicable, and the final decision on whether to apply the estoppel doctrine was left to the lower court's "sense of justice and equity." *Id.* at 334, 91 S.Ct. 1434.

Under the general *Blonder-Tongue* criteria, this case presents few compelling reasons for circumventing the estoppel doctrine. Not only are the issues here identical to those in the *RCA* litigation, but Sampson was the plaintiff in that suit, with every incentive to litigate the merits, and the suit was pursued in the precise forum which Sampson chose. And, Sampson voluntarily chose not to seek review of Judge McLean's order in this court, a course that might well have settled several years ago the substantive arguments he presents here.

Nonetheless, Sampson argues that he was deprived of a fair opportunity to litigate the issue of patent invalidity in the *RCA* suit, claiming that Judge McLean wholly "failed to grasp" the § 120 argument which, if accepted, would have entitled to '041 patent to an earlier effective filing date and avoided the § 102(b) publication problem. But the record indicates that the arguments which Sampson presses upon us are precisely those which he urged upon Judge McLean, and to which both parties directed their attention at that time. Judge McLean fully considered those arguments and held against Sampson, a decision that Sampson decided not to appeal. Ordinarily, that would end our inquiry on the estoppel issue, particularly since the underlying issue, the applicability of § 120, involves statutory construction and not the kind of technical considerations common to other pat-

ent litigation, such as that involving non-obviousness.[3]

However, noting the *Blonder-Tongue* admonition that "justice and equity" control the final decision, and mindful of Judge McLean's remarks that the result in the first case was "unfortunate," we have, perhaps in an excess of caution, asked the parties here to brief the question of the correctness of the original *RCA* decision. Were we convinced that Judge McLean committed egregious error on the § 120 issue, we might possibly be able to say that this case fits within the "relatively rare" *Blonder-Tongue* exception, where a trial judge "wholly failed to grasp the . . . issues in suit." But such is not the case here.

Sampson's chief claim is that the hiatus between the March 5, 1959 filing date of the '412 application and the March 18, 1963 filing date of application 267,881, which Judge McLean found applicable, was "bridged" by four intervening applications, and that § 120 thus gives him benefit of the earlier date. We have considered this argument with some care, and have examined the voluminous record before us in light of it. Having done so, we find ourselves unable to conclude that application of the *Blonder-Tongue* estoppel rule in this case would not be in the interests of "justice and equity."

To be sure, Sampson did file at least four applications in the period between March 5, 1959 and March 18, 1963, and each of those applications seems to deal with the same general subject matter. But this is not enough to invoke the § 120 copendency doctrine. Former Patent Office Rule 78(a) (now codified without substantial change as 37 C.F.R. § 1.78(a)) specifically provided

"When an applicant files an application claiming an invention disclosed in a prior filed copending application of the same applicant, the second application must contain or be amended to contain a reference in the specification to the prior application, identifying it by serial number and filing date of the prior applications, if the benefit of the filing date of the prior application is claimed; if no such reference is made the prior application must be referred to in a separate paper filed in the later application."

Ampex argues to us, as it did to Judge McLean, that Sampson's later applications did not sufficiently comply with the identification provisions of this rule. Our independent examination of the record suggests that there is merit in Ampex' position. In light of our quite serious doubts as to the sufficiency of Sampson's compliance with Rule 78(a), and hence his ability to claim an earlier filing date under § 120, we simply cannot conclude that Judge McLean's decision in this case constitutes such egregious error or failure to grasp the essential issues in suit as to invoke the "relatively rare" *Blonder-Tongue* exception. *Cf.* Sampson v. Ampex Corp., 463 F.2d 1042 (2d Cir. 1972).

We pause to note that we are not today affirming—or finding error with— Judge McLean's *RCA* judgment. Such a full-scale review is not our function under the estoppel doctrine. If Sampson wanted full review of the *RCA* decision, he should have not abandoned his original appeal. Rather, we have examined the merits in the *RCA* case only to satisfy ourselves that the decision was not based on such a blatant misunderstanding of the relevant legal principles as to make application of the estoppel doctrine

---

3. Mr. Justice White noted in *Blonder-Tongue* that many "nontechnical" patent issues—among which § 120 questions are presumably included—"are more often than not no more difficult than those encountered in the usual nonpatent case." 402 U.S. at 332 and n. 23, 91 S.Ct. at

1444. While we have no quarrel with the Court's eventual conclusion that modern estoppel rules should thus apply to patent litigation, we do note in passing that the Court which so described "nontechnical" patent questions did not have before it the prolix papers in this case.

inequitable. We find it quite clear that no such situation is presented by this case, and conclude that the district court correctly applied the *Blonder-Tongue* rule.

Affirmed.