583 F.2d 1078
 200 U.S.P.Q. 651
 PENN INTERNATIONAL INDUSTRIES, a California Corporation,
Plaintiff-Appellee,
v.
The PENNINGTON CORPORATION, a California Corporation, the
Bedroom, a corporation, and the Comfort Zone, a
corporation, Defendants-Appellants,
and
William Pennington, an Individual Defendant.
AMERICAN THERMO SEAL, INC., Plaintiff-Appellee,
v.
PENN INTERNATIONAL INDUSTRIES, INC., Defendant-Appellant.
 Nos. 77-2142, 77-3501.
 United States Court of Appeals,
Ninth Circuit.
 Sept. 1, 1978.
Rehearing Denied Oct. 16, 1978.
 
 Glen R. Grunewald, of Warren, Chickering & Grunewald, Oakland, Cal., for defendants-appellants.
 Robert J. Schaap, of Romney Schaap Golant Scillieri Disner & Ashen, Beverly Hills, Cal., for plaintiff-appellee.
 Appeals from the United States District Court for the Northern District of California and from the United States District Court for Central District of California.
 Before WRIGHT and TANG, Circuit Judges, and THOMPSON,* District Judge.
 EUGENE A. WRIGHT, Circuit Judge.
 
 
 1
 We consolidated these appeals to consider two challenges to Patent No. 3,778,852 (air-frame water bed) held by Penn International Industries (Penn).
 
 
 2
 In No. 77-2142 Penn sued Pennington Corporation, a water bed manufacturer, and several of its retailers for infringement in District Court for the Northern District of California. Among its defenses, Pennington alleged that the patent was invalid for obviousness. The court found the patent valid and infringed, and on appeal we affirmed most of the judgment[1] but remanded for further consideration of the obviousness issue. The court again held the patent valid and Pennington appeals.
 
 
 3
 In No. 77-3501 American Thermo Seal (American), another water bed manufacturer, sought a declaration of patent invalidity in the District Court for the Southern District of California. Penn responded by claiming that American was infringing its patent. The court granted summary judgment for American and Penn appeals.
 
 
 4
 For the reasons explained below we affirm the judgment of validity in No. 77-2142 and vacate and remand the judgment in No. 77-3501.
 
 I. The Patent in Suit
 
 5
 Penn's patent claims a water bed consisting of a water chamber constructed of heat-sealed polyvinyl chloride, surrounded by a single air chamber of equal or greater height. The vertical wall of the water chamber is formed by an inner sheeting, sealed to the chamber's top and bottom sheets at a point inward from their edges. The top and bottom sheets thus extend beyond the water chamber and are sealed to one another at their edges to form the surrounding chamber of air.
 
 
 6
 When the bed is filled for use, air is introduced into its chamber at a pressure sufficient to depress the inner wall against the liquid, thereby framing it. This configuration eliminates the necessity of a rigid (usually wooden) frame and supports the encased water to provide a flat sleeping surface. Eliminating the solid frame makes entering and leaving the bed less difficult, provides a comfortable seating area at the bed's edge, and renders the bed, when emptied, completely collapsible and easily transportable.
 
 
 7
 The Penn design's other primary advantage is that all of the bed's water-enclosing seams are located internally so that, should they fail, water and air will move between their respective chambers but will not escape the confines of the bed. This feature renders Penn's bed suitable for indoor use.
 
 II. No. 77-2142
 
 8
 In the earlier appeal we remanded because the trial judge did not consider the patent's obviousness in light of the "Suntanner," an air-frame water bed prior to Penn's:
 
 
 9
 On the question of the patent's validity, we hold that the Suntanner was relevant prior art and that since it was not taken into consideration by the Patent Office, the presumption of the patent's validity is dissipated. We hold further that the Suntanner was the most pertinent prior art, being the only air-frame water bed in the prior art, and that in appraising the advance of the Penn patent over prior art, the advance over the Suntanner must be ascertained and appraised.
 
 
 10
 Penn International Industries v. The Pennington Corp., No. 75-2839 (unpub. memorandum, 9th Cir. Dec. 13, 1976).
 
 
 11
 On remand the court exhaustively considered the Suntanner's teachings and the level of skill in the art and concluded that the Penn patent is nonobvious. The appellants do not challenge the court's factual findings but raise the following issues.
 
 
 12
 1) When a patented invention is not supported by evidence of the secondary considerations set forth in Graham v. John Deere Co., 383 U.S. 1, 17-18, 86 S.Ct. 684, 15 L.Ed.2d 545 (1966), can a holding of patent validity stand as a matter of law? As a "related sub-issue" appellants challenge the sufficiency of the factual findings to support the conclusion of nonobviousness.
 
 
 13
 2) When the only experienced patent licensee has been unsuccessful in attempts at commercial production, is the patent invalid under 35 U.S.C. § 112?
 
 A. Obviousness and Secondary Considerations
 
 14
 Section 103 of 35 U.S.C. establishes nonobviousness as one of three conditions of patentability.[2] The ultimate question of patentability is one of law, but the legal conclusion is resolved against the background of three factual inquiries:a) scope and content of the prior art;
 
 
 15
 b) differences between the prior art and the claims in suit; and
 
 
 16
 c) the level of skill in the pertinent art.
 
 
 17
 Graham, 383 U.S. at 17, 86 S.Ct. 684. See also Austin v. Marco Dental Products, 560 F.2d 966, 970 (9th Cir. 1977), Cert. denied 435 U.S. 918, 98 S.Ct. 1477, 55 L.Ed.2d 511 (1978).
 
 
 18
 In Graham the Supreme Court approved appraisal of secondary considerations such as "commercial success, long felt but unsolved needs, failure of others, etc.," to cast light on the circumstances surrounding the origin of the item sought to be patented. Graham, 383 U.S. at 17-18, 86 S.Ct. at 694. The Graham court made clear that such inquiries are secondary and that the resort to them is permissible but not required. Id. at 18, 86 S.Ct. 684.
 
 
 19
 To be patentable an item must be novel, useful and nonobvious, 35 U.S.C. §§ 101-103; Graham, 383 U.S. at 12, 86 S.Ct. 684. Consideration of secondary factors will often assist in ascertaining whether the alleged invention is obvious, but neither their presence nor absence is alone determinative of the question.
 
 
 20
 Pennington asserts that the court's findings of fact do not support the conclusion of patent validity. In addressing this contention we must first consider whether Penn's patent comprehends new elements or is merely a combination of old ones. Combination patents are subjected to rigid scrutiny.
 
 
 21
 Courts should scrutinize combination patent claims with a care proportioned to the difficulty and improbability of finding invention in an assembly of old elements. . . . A patent for a combination which only unites old elements with no change in their respective functions . . . obviously withdraws what already is known into the field of its monopoly and diminishes the resources available to skillful men.
 
 
 22
 Sakraida v. Ag Pro, Inc., 425 U.S. 273, 281, 96 S.Ct. 1532, 1537, 47 L.Ed.2d 784 (1976) (quoting Great A & P Tea Co. v. Supermarket Corp., 340 U.S. 147, 152, 71 S.Ct. 127, 95 L.Ed. 162 (1950)).
 
 
 23
 To withstand challenge a combination patent must be synergistic; it must result "in an effect greater than the sum of the several effects taken separately." Anderson's-Black Rock v. Pavement Co., 396 U.S. 57, 61, 90 S.Ct. 305, 308, 24 L.Ed.2d 258 (1969). See also Sakraida, 425 U.S. at 282. Phrased differently, to be valid a combination patent must produce an "unusual or surprising result." Kamei-Autokomfort v. Eurasian Automotive Products, 553 F.2d 603, 608 (9th Cir. 1977); Austin v. Marco Dental Products, 560 F.2d at 972.
 
 
 24
 Whether the combination patent standards for validity come into play requires consideration of external evidence and depends on the state of the prior art. The Suntanner is the only prior art under consideration in this case and the district court found that Penn's patent included numerous elements not found in the Suntanner.[3] We therefore conclude that, on this record, the Penn patent cannot be deemed a combination and need not demonstrate an unusual or surprising result to be valid.
 
 
 25
 We recognize that the Penn structure is not complex, but its simplicity is one of its primary virtues. "This court has made it clear, moreover, that an invention will not be denied a patent because it embodies a solution which seems simple and obvious with the benefit of hindsight." Saf-Gard Products, Inc. v. Service Parts, Inc., 532 F.2d 1266, 1272 (9th Cir.), Cert. denied 429 U.S. 896, 97 S.Ct. 258, 50 L.Ed.2d 179 (1976) (citing National Sponge Cushion Co. v. Rubber Corp., 286 F.2d 731, 735 (9th Cir. 1961), Cert. denied, 368 U.S. 976, 82 S.Ct. 480, 7 L.Ed.2d 438 (1962)).
 
 
 26
 The Penn bed's suitability for indoor use marks a definite functional advance over the Suntanner. Even minor changes from the prior art can produce a patentable invention so long as the result could not have been predicted beforehand by a person skilled in the art. Saf-Gard Products, 532 F.2d at 1272.
 
 
 27
 The district court's conclusion that the patent in suit is not obvious in light of the Suntanner is supported by the record and by findings of fact which are not clearly erroneous.
 
 B. Validity under 35 U.S.C. § 112
 
 28
 Appellants contend that the patent is invalid because it does not contain a written description of the invention "in such full, clear, concise, and exact terms as to enable any person skilled in the art to which it pertains . . . to make and use the same." 35 U.S.C. § 112.
 
 
 29
 Appellants failed to raise this issue in the prior appeal and it is now too late for them to do so. Calhoun v. Bernard, 359 F.2d 400, 401 (9th Cir. 1966). We note, however, that the district court did consider the argument and entered findings which resolved it in Penn's favor.
 
 
 30
 The judgment of patent validity in No. 77-2142 is affirmed.
 
 III. No. 77-3501
 
 31
 In this case the trial judge rejected American's first motion for summary judgment, but granted the second and held Penn's patent invalid.
 
 
 32
 The first motion was based primarily on two prior art references: Krupp, Patent No. 2,223,625 pneumatic boat, and Laurila, Patent No. 957,892 air mattress. The second motion added a third prior art reference: Nail, Patent No. 3,001,207 wading pool.
 
 
 33
 We begin with the proposition that in circumstances when Fed.R.Civ.P. 56 standards are met and the court, without the aid of expert testimony, can understand the prior art and patent claims, summary judgment may be proper. See Grayson v. McGowan, 543 F.2d 79, 80 & n.2 (9th Cir. 1976). Equally true, however, is the proposition that summary judgment may not be granted when material issues of fact remain to be resolved. Schroeder v. Owens-Corning Fiberglas Corp., 514 F.2d 901, 904 (9th Cir. 1975).
 
 
 34
 The trial judge based his conclusion of obviousness ostensibly on the prior art referenced in the second summary judgment motion. But the state of the record leaves this less than clear. Although the court did review the teachings of the referenced art, there is no indication that he compared it to that considered by the Patent Office or that he concluded it was more pertinent than that considered when the patent was issued.
 
 
 35
 As a result, we are unable to conclude that the statutory presumption of patent validity was dissipated or overcome. Alleged art that is cumulative to that previously considered does not weaken or destroy the presumption of validity. See Saf-Gard Products, 532 F.2d at 1271.
 
 
 36
 There are further indications that summary judgment was improvidentlygranted. During the summary judgment hearing the judge indicated that he did not consider the added reference to the Nail patent to provide the "missing link" necessary to change his earlier decision denying summary judgment. He did indicate, however, his subjective feeling that the Penn patent was too simple a device to be patentable. There is also some indication that the judge's ruling was based in part on his own perception of what the parties' evidence at trial would show.
 
 
 37
 Under the circumstances, we must remand the cause for further proceedings. Before American's prior art references can serve as the basis for a declaration of invalidity the court must compare their pertinence to the references before the patent examiner. The court should make further Graham findings and take such evidence as is necessary to resolve remaining doubts about the teachings of the art before it.
 
 
 38
 On remand the court will be free, of course, to consider all the relevant evidence, and our conclusion of validity in No. 77-2142 will not be determinative of its inquiry. The cases present distinct challenges to the patent, prosecuted by different parties, and based on different evidence.[4] The doctrines of subject and issue preclusion are inapplicable.[5] Grayson, 543 F.2d at 81.
 
 IV. Conclusion
 
 39
 The judgment of the district court in No. 77-2142 is affirmed and the judgment in No. 77-3501 is vacated and remanded.
 
 
 
 *
 United States District Judge for the District of Nevada
 
 
 [1]
 We affirmed the judgment on the issues of infringement, late claiming, fraud on or concealment from the Patent Office and attorney's fees
 
 
 [2]
 § 103. Conditions for patentability; non-obvious subject matter
 A patent may not be obtained though the invention is not identically disclosed or described as set forth in section 102 of this title, if the differences between the subject matter sought to be patented and the prior art are such that the subject matter as a whole would have been obvious at the time the invention was made to a person having ordinary skill in the art to which said subject matter pertains. Patentability shall not be negatived by the manner in which the invention was made.
 
 
 [3]
 The differences between the Suntanner and the claims at issue are that the top and bottom sheets of the construction covered by the claims at issue are common to both the air chamber and the water chamber, whereas the top and bottom sheets of the Suntanner Enclose only the water chamber; that the usual construction of the structure embodying the claims at issue employs only three seams, while the usual construction of the Suntanner employs five seams, that the construction of the claims at issue does not include a seam through which water may leak beyond the confines of the bed, whereas the structure of the Suntanner includes 3 seams through which water may leak beyond the confines of the bed; that if any seam of the Penn construction is not properly made or damaged in use, one of two things occurs: the first being that air escapes from the air chamber (through seam 27) and the second is that air and water may exchange chambers (through seams 21 or 22), but in either case water does not escape from the confines of the water bed, whereas the structure of the Suntanner is such that if any of three seams are improperly made or damaged in use, water escapes from the confines of the bed; that the top surface of the structure of the claims is a smooth continuous sheet, free of seams, while the top surface of the Suntanner includes a number of sheets and at least two seams
 Finding of Fact No. 41.
 
 
 [4]
 In our memorandum disposition of December 13, 1976, we stated that the Suntanner "was the most pertinent prior art." That conclusion was based only upon the references before the court in that appeal and does not preclude the district court in this case from deciding that some or all of the references cited by American are more pertinent than the art cited to the patent examiner
 
 
 [5]
 Penn has challenged the court's award of attorneys' fees, rendered under the "exceptional case" provision of 35 U.S.C. § 285. That award, of course, must be reconsidered in light of the result of the proceedings on remand. The trial court's discretion to award fees in patent suits may be exercised only upon a finding of "bad faith or inequitable conduct" by the losing party which would make it "grossly unjust" for the prevailing party to be left to bear its litigation expenses. See Maurice A. Garbell, Inc. v. Boeing Co., 546 F.2d 297, 300 (9th Cir. 1976.)
 Should the court decide to award fees, it must enter precise findings clearly showing the necessary prerequisites. Dow Chemical Co. v. Dart Industries, 475 F.2d 124, 125 (9th Cir. 1973) (citing Florida Brace Corp. v. Bartels, 332 F.2d 337 (9th Cir. 1964)).