Richard Lawrence STEVENSON,
Appellant,

v.

SEARS, ROEBUCK & COMPANY,
Appellee.

Appeal No. 83–746.

United States Court of Appeals,
Federal Circuit.

July 27, 1983.

---

Keith D. Beecher, Santa Monica, Cal., argued, for appellant.

Ellsworth Roston, Los Angeles, Cal., argued, for appellee. With him on brief was Bruce A. Jagger, Los Angeles, Cal.

Before RICH, BALDWIN, KASHIWA, BENNETT and SMITH, Circuit Judges.

BENNETT, Circuit Judge.

This appeal is from a judgment of the United States District Court for the Central District of California. *Stevenson v. Sears, Roebuck & Co.,* No. 77–4518 (C.D.Cal. Jan. 14, 1983). In the district court, the appellant (Stevenson) unsuccessfully attempted to enforce a patent that had been the subject of seemingly inconsistent determinations in two previous suits. In 1979, the Court of Customs and Patent Appeals (one of our predecessor courts) held that certain foreign corporations had "failed to carry

their burden of persuasion in asserting the invalidity of the subject claims of the Stevenson patent." *Stevenson v. International Trade Commission,* 612 F.2d 546, 555, 67 CCPA 109, 204 USPQ 276, 284 (1979). In 1981, however, the United States Court of Appeals for the Ninth Circuit held that a different defendant—Grentec, Inc.—had carried its burden of persuasion and that therefore Stevenson's patent was invalid because the invention would have been obvious. *Stevenson v. Grentec, Inc.,* 652 F.2d 20, 23, 211 USPQ 1020, 1022 (9th Cir.1981), *cert. denied,* 456 U.S. 943, 102 S.Ct. 2008, 72 L.Ed.2d 465 (1982). Applying the law as enunciated in *Blonder-Tongue Laboratories, Inc. v. University of Illinois Foundation,* 402 U.S. 313, 91 S.Ct. 1434, 28 L.Ed.2d 788 (1971), the district court in the present case held that Stevenson had a full and fair opportunity to litigate the validity of his patent in the prior unsuccessful suit against Grentec, Inc., and that therefore he was collaterally estopped from asserting the validity of his patent against the defendant-appellee, Sears, Roebuck & Company (Sears). The court also held that Sears was entitled to attorney fees in the amount of $5,000. For the reasons that follow, we *affirm in part and reverse in part.*

## I. *Background.*

In 1977, appellant, Richard L. Stevenson (Stevenson) filed an amended complaint with the International Trade Commission (ITC) pursuant to section 337 of the Tariff Act of 1930 (codified as amended at 19 U.S.C. § 1337 (1976 & Supp. V 1981)), contending that unfair methods of competition existed in the importation and distribution of certain skateboards alleged to infringe claims 1, 2, 7, and 8 of U.S. Patent No. 3,565,454 to Stevenson. The subject device of the claims is commonly known as a kicktail skateboard. The ITC held that there was no violation of section 337 of the Act. On appeal, the Court of Customs and Patent Appeals (CCPA) reversed. After reviewing the evidence submitted by Stevenson and the various defendants-appellees (certain foreign corporations), the CCPA found that "there is no evidence of record

that would have suggested to one having ordinary skill in the art at the time of appellant's invention that the up-swept tail of the rocker board would function to provide improved maneuverability." *Stevenson v. International Trade Commission,* 612 F.2d at 554, 67 CCPA at ——, 204 USPQ at 283. Therefore, on the evidence of record, the CCPA held that the appellees had "failed to carry their burden of persuasion in asserting the invalidity of the subject claims of the Stevenson patent." *Id.* at 555, 67 CCPA at ——, 204 USPQ at 284. It is important to note that this decision did not hold Stevenson's patent valid; it merely held that the appellees in that case had not carried their statutory burden of proving Stevenson's patent invalid. *See* 35 U.S.C. § 282 (1976), *amended by* the Federal Courts Improvement Act of 1982, Pub.L. No. 97–164, § 161(7), 96 Stat. 25, 49 ("A patent shall be presumed valid.... The burden of establishing invalidity of a patent or any claim thereof shall rest on the party asserting such invalidity.").

Prior to the filing of the ITC action, Stevenson had brought a patent infringement suit in the United States District Court for the Central District of California against Grentec, Inc., and certain other defendants. For convenience, this action will be labeled "Suit I." On November 30, 1979 (3 weeks before the CCPA's decision in *Stevenson v. International Trade Commission* ), the district court granted Grentec's motion for summary judgment in Suit I and declared Stevenson's patent invalid. Shortly after this adverse determination, a different district judge in the central district of California held that Stevenson was collaterally estopped from relitigating the validity of his patent in another patent infringement suit that had been brought by Stevenson ("Suit II"). *Stevenson v. Gottschlich,* No. 77–2974 (C.D.Cal. April 25, 1980).

Stevenson appealed from the district court's judgment of invalidity in Suit I. On appeal, the Court of Appeals for the Ninth Circuit gave great weight to the decision of the CCPA but affirmed the district court's determination of invalidity on different evi-

dence. *See Stevenson v. Grentec, Inc.,* 652 F.2d at 22–23, 211 USPQ at 1022. The court noted that the CCPA had advanced two reasons for not holding Stevenson's patent invalid: (1) the foreign corporations in that action "failed to present evidence that the invention was within the ordinary skills of an average skateboarder; and (2) the kicktail skateboard was commercially successful." *Id.* at 23, 211 USPQ at 1022. The Ninth Circuit, however, found that, unlike the foreign defendants in the ITC suit, Grentec, Inc., had presented sufficient evidence before the district court that "the kicktail skateboard was within the ingenuity of the average skateboarder." *Id.* Because of this fact, the court did not consider the commercial success of the invention to be dispositive; therefore, it held Stevenson's patent invalid as the invention would have been obvious. *Id.* The Supreme Court denied certiorari, 456 U.S. 943, 102 S.Ct. 2008, 72 L.Ed.2d 465 (1982).

Although the Ninth Circuit had affirmed the district court's determination of invalidity and the Supreme Court had denied certiorari, Stevenson continued to prosecute his patent infringement suit against Sears ("Suit III"). In this, the present action, which was also brought in the central district of California, Stevenson advanced two reasons why he should not be collaterally estopped from asserting the validity of his patent. First, Stevenson argued that collateral estoppel was inappropriate here because his patent had previously been held "valid"[1] by the CCPA. Second, he alleged that the affidavits relied upon by the district court in granting Grentec's motion for summary judgment in Suit I (invalidating the patent) were tainted by the "special relationship" between the affiants and Grentec, Inc.

The district court rejected these contentions. It noted that the Ninth Circuit had considered the effect of the CCPA's decision

before affirming the district court's finding of invalidity; and that Stevenson had an opportunity to attack the allegedly tainted affidavits in Suit I, but did not do so. Consequently, the district court held that Stevenson had a full and fair opportunity to litigate the validity of his patent in Suit I, and was therefore collaterally estopped from asserting the validity of his patent in Suit III. Furthermore, the court held that Sears was entitled to attorney fees in the amount of $5,000, because Stevenson had continued to prosecute the validity of his patent after the prior judgment of invalidity had become final. *See* 35 U.S.C. § 285 (1976) ("The court in exceptional cases may award reasonable attorney fees to the prevailing party.").

Stevenson timely appealed from the January 14, 1983 judgment of the district court, entered January 26, 1983. In the past, Stevenson's appeal would have been to the Ninth Circuit; but, effective October 1, 1982, Congress granted exclusive jurisdiction over patent appeals to this court. Federal Courts Improvement Act of 1982, Pub.L. No. 97–164, §§ 125(b), 127(a), 96 Stat. 25, 36–38 (to be codified at 28 U.S.C. §§ 1292(c)(2), 1295(a)(1), 1295(a)(4)(C)). Stevenson now contends that the prior decision of the CCPA in *Stevenson v. International Trade Commission,* 612 F.2d 546, 67 CCPA 109, 204 USPQ 276, is binding on this court,[2] and that therefore we should collaterally estop Sears from asserting the *invalidity* of Stevenson's patent. Stevenson also contends that *he* should not be collaterally estopped because he did not have a full and fair opportunity to litigate the validity of his patent in Suit I, as the court's decision in that case was (1) based on tainted affidavits, and (2) based on a motion for summary judgment and not on a full-fledged trial. Finally, Stevenson argues that an award of attorney fees to Sears is not justified in this case.

---

1. Although Stevenson argues that his patent was held "valid" by the CCPA, in reality it is more accurate to say, as noted above, that the CCPA held that the defendants had failed to prove Stevenson's patent invalid.

2. In *South Corp. v. United States,* 690 F.2d 1368, 1370–71, 215 USPQ 657, 657–58 (Fed.Cir. 1982), this court adopted the precedents of its two predecessor courts—the Court of Claims and the Court of Customs and Patent Appeals.

## II. *Discussion.*

### A. *Blonder-Tongue: Collateral Estoppel and the Appropriate Inquiry.*

■ As noted by the district court, the appropriate legal test for determining whether a plaintiff-patentee should be collaterally estopped from asserting his alleged patent right is set forth in *Blonder-Tongue,* 402 U.S. 313, 91 S.Ct. 1434, 28 L.Ed.2d 788. There the Supreme Court held that a prior determination of patent invalidity may be asserted as a defense to a subsequent attempt to enforce the patent, and that this defense must be accepted by a court unless the patentee demonstrates that he was denied a full and fair opportunity to litigate the validity of his patent in the prior unsuccessful action. The Court recognized that "[d]etermining whether a patentee has had a full and fair chance to litigate . . . in an earlier case is of necessity not a simple matter." *Id.* at 333, 91 S.Ct. at 1445. The Court, however, listed some factors to be considered: (1) whether the patentee was the plaintiff in the prior suit and chose to litigate at that time and place; (2) whether the patentee was prepared to litigate and to litigate to the finish against the defendant there involved; (3) if the issue is obviousness, whether the first validity determination purported to employ the standards announced in *Graham v. John Deere Co.,* 383 U.S. 1, 86 S.Ct. 684, 15 L.Ed.2d 545 (1966); (4) whether the prior case was one of those relatively rare instances where the courts wholly failed to grasp the technical subject matter and the issues in suit; and (5) whether without fault of his own the patentee was deprived of crucial evidence or witnesses in the first litigation. *Id.* 402 U.S. at 332–33, 91 S.Ct. at 1444–45.

■ These are but some of the appropriate inquiries for the trial court. There is no "automatic formula." "In the end, [the] decision will necessarily rest on the trial courts' sense of justice and equity." *Id.* at 334, 91 S.Ct. at 1445. Although there is no exhaustive list of appropriate inquiries, it is clear from the case law that has developed since *Blonder-Tongue* that an inappropriate inquiry is whether the prior finding of invalidity was correct; instead, the court is only to decide whether the patentee had a full and fair opportunity to litigate the validity of his patent in the prior unsuccessful suit. *See Kaiser Industries Corp. v. Jones & Laughlin Steel Corp.,* 515 F.2d 964, 978, 185 USPQ 343, 354 (3d Cir.), *cert. denied,* 423 U.S. 876, 96 S.Ct. 150, 46 L.Ed.2d 110 (1975); *Carter-Wallace, Inc. v. United States,* 496 F.2d 535, 542, 182 USPQ 172, 178, 204 Ct.Cl. 341, (1974); *Blumcraft of Pittsburgh v. Kawneer Co.,* 482 F.2d 542, 546, 178 USPQ 513, 516 (5th Cir.1973); *Sampson v. Ampex Corp.,* 478 F.2d 339, 342, 178 USPQ 65, 67 (2d Cir.1973).

This is the rule not only when there is but one prior determination—that of invalidity—as in *Blonder-Tongue, see, e.g., Carter-Wallace, Inc.,* 496 F.2d 535, 182 USPQ 172, 204 Ct.Cl. 341, but also when there are two seemingly inconsistent prior determinations: one holding the patent "valid," [3] the other invalid, *see Blumcraft,* 482 F.2d 542, 178 USPQ 513.

We believe this is the proper rule. As stated by the Fifth Circuit in *Blumcraft:*

> The fact that a prior inconsistent ruling of validity raises a question as to the correctness of the invalidity determination does not create an exception to *Blonder-Tongue* and in fact is fully supported by the facts in *Blonder-Tongue.*
>
> . . . .
>
> . . . For instance, under our ruling today it would be technically possible to apply collateral estoppel where a prior finding of invalidity was preceded by several rather than by just one finding of validity. In such instances there would be a red flag warning a court to apply the full and fair criteria very carefully to determine if the court finding the patent invalid had adequately comprehended and applied the appropriate substantive standards. Ultimately, of course, there is appeal to the Supreme Court from the finding of invalidity; and, while we recognize

---

**3.** *See supra* note 1.

the apparent difficulty in obtaining relief through this channel, we cannot predicate an exception to a rule mandated by the Supreme Court on the basis of our assessment of the Court's further performance. In any event, the "injustice" to the patentee in such cases is no greater and in fact is arguably less than in a situation such as *Blonder-Tongue,* where the determination of invalidity came prior to *any* validity rulings. In *Blonder-Tongue,* despite the explicit fact that, absent the application of collateral estoppel, further *successful* suits on the patent would have been possible after the first unsuccessful suit, the Supreme Court sanctioned, and ultimately the Seventh Circuit allowed collateral estoppel to be applied. It follows that the fact of a *prior* successful suit, as here, should not, in itself, be permitted to undermine the numerous policy reasons expounded in *Blonder-Tongue* in favor of applying estoppel.
. . . .

    *Blonder-Tongue* did not throw merely a jab at the multiplicity of patent litigation; rather, it intended a knockout blow through the doctrine of collateral estoppel so that any time a patent was found invalid in a fair fight with a knowledgeable referee, the courts could count ten and the patent holder could no longer maintain that he was champion.

*Id.* at 548–49, 178 USPQ at 517–18 (emphasis in text).

We also add, as stated earlier, that the prior holding of validity is not necessarily inconsistent with the subsequent holding of invalidity. In one action, the defendants did not overcome the statutory presumption of validity; in the other they did. The difference in result could be attributable to many neutral facts: e.g., different prior art references or different records. It cannot always be said that of two "inconsistent" determinations, one is correct and one is incorrect. Thus, we do not believe that the

existence of a seemingly inconsistent prior holding on "validity" should change the inquiry from a full and fair opportunity to litigate to one of correctness; rather, it should serve only as a "red flag warning" to the court to apply the full and fair criteria more carefully.

It should be noted, however, that in *Blumcraft* the Fifth Circuit was confronted with prior inconsistent determinations from two different courts: the Court of Claims (patent "valid") and the Fourth Circuit (patent invalid). They were not, as we are here, confronted with two seemingly inconsistent determinations, one of which—the determination of "validity"—being our court's own precedent.

Because of this factual distinction, Stevenson argues that we should collaterally estop Sears, rather than him, and that we are bound by stare decisis to our prior determination of "validity." We consider these arguments below.

### B. *Collateral Estoppel Against Sears and Stare Decisis.*

■ Stevenson's first contention is that Sears should be collaterally estopped from asserting the *invalidity* of his patent because the CCPA has previously held his patent to be "valid." We believe, however, that it would be inappropriate in the situation here to bind Sears to the CCPA's prior determination on "validity." The only parties in the previous action before the ITC (which the CCPA reviewed) were Stevenson and certain foreign defendants. Sears was neither a party to that action nor in privity with any of the parties; therefore, we do not believe it should be bound by that decision.[4] *See Blonder-Tongue,* 402 U.S. at 329, 91 S.Ct. at 1443; *Boutell v. Volk,* 449 F.2d 673, 678, 171 USPQ 668, 672 (10th Cir.1971) ("Neither the actual decision of the Supreme Court [in *Blonder-Tongue* ] nor the language of the opinion suggests that the

---

4. If Sears had in fact been a party to the prior ITC action, then that would be a different matter. In that situation the court might refuse to undo what has been done and thus refuse to set aside its prior determination of validity as

against Sears. *See Huron Machine Products, Inc. v. A. and E. Warbern, Inc.,* 615 F.2d 222, 226 n. 2, 205 USPQ 777, 780 n. 2 (5th Cir.1980); *Jamesbury Corp. v. United States,* 217 Ct.Cl. 658 (1978).

mutuality requirement is relaxed as to a new infringer following an adjudication of validity. To so hold would deprive the alleged infringer of a trial. Thus, the obvious distinction is that it is not inequitable to relax mutuality in a situation in which the patentee has fired his best shot, so to speak, and has missed. On the other hand, it is grossly inequitable to bind a party to a judgment of *validity* rendered in an action against some other party.") (emphasis in text). *See also* 4 D. Chisum, Patents § 19.02[2][e], at 19–30 to 31 (1982).

■ Stevenson's second contention is that under the doctrine of stare decisis we are bound by the CCPA's prior holding of "validity." We do not agree. *Blonder-Tongue* dictates that our function here is not to decide the "validity" or invalidity of a patent, but to decide whether the patentee should be collaterally estopped. Thus, our scope of review is limited to deciding whether the patentee had a full and fair opportunity to litigate the validity of his patent in the prior unsuccessful suit.

■ Furthermore, we note that the doctrine of stare decisis is generally an inappropriate one in patent litigation. As stated earlier, patents cannot be held "valid" under all circumstances. Rather, a court merely decides in a particular case that the one attacking validity has not overcome the statutory presumption of validity. Thus, even if our function here were to determine the "validity" or invalidity of Stevenson's patent (which we do not believe it is), we would not necessarily be bound by the CCPA's prior decision in *Stevenson v. International Trade Commission.* To be sure, a prior holding of "validity" should be given weight in a subsequent suit on the issue of "validity." But the prior holding does not necessarily have stare decisis effect.[5] *See*

*Penn International Industries v. Pennington Corp.,* 583 F.2d 1078, 1083, 200 USPQ 651, 655–56 (9th Cir.1978); *Graham v. Cockshutt Farm Equipment, Inc.,* 256 F.2d 358, 359, 117 USPQ 439, 440 (5th Cir.1958). *But see Cold Metal Process Co. v. E.W. Bliss Co.,* 285 F.2d 231, 236, 128 USPQ 49, 53 (6th Cir.1960) (rule of stare decisis is applicable unless court is convinced of "very palpable error in law or fact" in prior ruling of validity). "[I]t must be remembered that the issue of patent validity is often 'as fugitive, impalpable, wayward, and vague a phantom as exists in the whole paraphernalia of legal concepts.... If there be an issue more troublesome, or more apt for litigation than this, we are not aware of it.' ... Because of the intrinsic nature of the subject, the first decision can be quite wrong, or derived from an insufficient record or presentation." *Technograph Printed Circuits, Ltd. v. United States,* 372 F.2d 969, 978, 153 USPQ 298, 304, 178 Ct.Cl. 543 (1967) (quoting *Harries v. Air King Products Co.,* 183 F.2d 158, 162 (2d Cir.1950) (L. Hand, C.J.)).

Thus, despite Stevenson's contentions, we believe that our function here as dictated by the Supreme Court's decision in *Blonder-Tongue* is to determine whether Stevenson had a full and fair opportunity to litigate the validity of his patent against Grentec, Inc., in Suit I. This, of course, does not mean that the CCPA's prior decision in *Stevenson v. International Trade Commission* is to be ignored. Its effect, however, is limited. As we have indicated, the decision serves only as a "red flag warning" to the district court to apply the full and fair criteria very carefully; it does not change the inquiry to one of correctness.

### C. *Full and Fair Opportunity to Litigate.*

■ As stated earlier, Stevenson argues that he did not have a full and fair opportu-

---

5. The weight given a prior holding of "validity" will vary depending on the additional prior art or other evidence on patentability that is produced in the subsequent suit. *See* 4 D. Chisum, Patents § 19.02[2][e], at 19–33 to 34 & n. 34 (1982). If, however, the record in the second suit is substantively identical to the record produced in the first suit, then it is extremely likely that the court will give its prior holding stare decisis effect. *See American Photocopy Equipment Co. v. Rovico, Inc.,* 384 F.2d 813, 815–16, 155 USPQ 119, 120 (7th Cir.1967), *cert. denied,* 390 U.S. 945, 88 S.Ct. 1030, 19 L.Ed.2d 1133 (1968) (infringer has burden of demonstrating that there is a material distinction between his case and the prior case holding the patent "valid").

nity to litigate the validity of his patent in Suit I because the court's decision was (1) based on tainted affidavits; and (2) based on a motion for summary judgment rather than a trial. Because of the seemingly inconsistent determination on "validity" by the CCPA, the district court was required to apply the full and fair criteria very carefully. We believe that it did so and that it correctly decided that Stevenson had a full and fair opportunity to litigate the validity of his patent in Suit I.

■ 1. *Special Relationship.* Before the district court, Stevenson introduced evidence in an attempt to show that a "special relationship" had existed between Grentec, Inc., and two affiants whose affidavits were relied upon by the trial judge in Suit I. The trial judge here noted that Stevenson had more than 3 years prior to the order invalidating his patent to investigate by way of deposition the alleged "special relationship," and failed to do so. Furthermore, Stevenson has not demonstrated that his evidence of the so-called "special relationship" is newly discovered evidence. *See Bourns, Inc. v. Allen-Bradley Co.,* 480 F.2d 123, 125, 178 USPQ 193, 194 (7th Cir.), *cert. denied,* 414 U.S. 1094, 94 S.Ct. 726, 38 L.Ed.2d 551 (1973). Consequently, we see no merit in Stevenson's argument on this point. Stevenson clearly had ample opportunity to establish the alleged "special relationship" in Suit I; his failure to do so does not create an exception to *Blonder-Tongue.*

■ 2. *Prior Determination of Invalidity Based on a Motion for Summary Judgment.* Stevenson also contends that collateral estoppel should not be applied when the prior determination of invalidity is based on a motion for summary judgment rather than a full-fledged trial. This fact, however, does not create a per se exception to *Blonder-Tongue.* We believe the rationale of *Blonder-Tongue* extends to all prior determinations of invalidity; its application is not dependent on how the judgment of invalidity was reached. Furthermore, if Stevenson believed that summary judgment was inappropriate in Suit I, he had the

opportunity to state his objections on appeal. Again, he failed to do so.

Therefore, we agree with the district court that Stevenson has failed to demonstrate that he did not have a full and fair opportunity to litigate the validity of his patent in Suit I. The issues raised here could have and should have been raised in Suit I. We also note that Stevenson does not contend that the district court and the Ninth Circuit lacked a total understanding of the "technical subject matter and issues in suit . . . ." *Blonder-Tongue,* 402 U.S. at 333, 91 S.Ct. at 1445. The fact that the Ninth Circuit's decision may differ from the CCPA's decision, does not automatically transform their decision into "one of those relatively rare instances where the courts wholly failed to grasp the technical subject matter and issues in suit." *Id.*

## D. *Attorney Fees.*

The patent statute permits the district court in exceptional cases to award reasonable attorney fees to the prevailing party. 35 U.S.C. § 285 (1976). "The award of such fees is discretionary with the trial court, *but such discretion may only be exercised upon a specific finding of exceptional circumstances.*" 5 D. Chisum, Patents § 20.-03[4][c], at 20–185 (1982) (emphasis added).

■ In this case, the trial judge held that the prevailing accused infringer was entitled to attorney fees because the patent owner had "continued to prosecute the present action after patent 3,565,454 had been held to be invalid in the District Court and in the Court of Appeals, after certiorari had been denied by the Supreme Court and after the judgment had become final." The trial judge, however, does not explain how this fact creates an exceptional circumstance which justifies an award of attorney fees. Under *Blonder-Tongue,* a finding of invalidity by one court does not foreclose subsequent litigation entirely; it merely limits the scope of any subsequent proceeding. In the subsequent action, a patentee-plaintiff is still entitled "to demonstrate, if he can, that he did not have 'a fair opportunity procedurally, substantively and eviden-

tially to pursue his claim the first time.'" *Blonder-Tongue,* 402 U.S. at 333, 91 S.Ct. at 1445 (quoting *Eisel v. Columbia Packing Co.,* 181 F.Supp. 298, 301 (D.Mass.1960)). Thus, a patentee should not be automatically penalized for pursuing an infringement action after a determination of invalidity in another suit. There must be some finding of unfairness, bad faith, or inequitable conduct on the part of the unsuccessful patentee. *See, e.g., Uniflow Mfg. Co. v. King-Seeley Thermos Co.,* 428 F.2d 335, 341, 166 USPQ 70, 74–75 (6th Cir.), *cert. denied,* 400 U.S. 943, 91 S.Ct. 245, 27 L.Ed.2d 248 (1970); *Continental Art Co. v. Bertolozzi,* 232 F.2d 131, 134, 109 USPQ 231, 233 (7th Cir.1956); *American Chain & Cable Co. v. Rochester Ropes, Inc.,* 199 F.2d 325, 330 (4th Cir.1952); *Merrill v. Builders Ornamental Iron Co.,* 197 F.2d 16, 25 (10th Cir.1952).

The trial judge made no finding that any of these exceptional circumstances are present here and nothing in the record would support such a finding. Furthermore, due to the unusual facts of this case, we cannot say that Stevenson's arguments were entirely devoid of merit. Therefore, it was improper for the trial judge to exercise her discretion in this case, as no legally sufficient exceptional circumstances were present to bring this case within 35 U.S.C. § 285. *See Uniflow Mfg. Co.,* 428 F.2d at 341, 166 USPQ at 75; 5 D. Chisum, Patents § 20.03[4][c], at 20–188 to 190 & n. 98 (1982). We therefore reverse the district court's judgment on this issue.

### III. *Conclusion.*

Under *Blonder-Tongue,* a patentee may be collaterally estopped from asserting the validity of his patent if in a previous action his patent was held invalid. The proper inquiry for the court is whether the patentee had a full and fair opportunity to litigate the validity of his patent in the prior unsuccessful suit. We hold that this is the proper inquiry even if there are two seemingly inconsistent prior determinations on "validity." A prior ruling of "validity" only puts the district court on notice to apply the full and fair criteria very careful-

ly. We believe that the district court did so in this case and that it correctly decided that Stevenson had his full and fair opportunity procedurally, substantively, and evidentially in his prior suit against Grentec, Inc. Stevenson's contentions that the decision in Suit I was based on tainted affidavits and was improperly decided on a motion for summary judgment are unpersuasive. These issues should have been raised in the prior proceedings. The fact that Stevenson chose not to do so does not entitle him to relitigate the "validity" of his patent. Furthermore, the fact that the CCPA had previously held Stevenson's patent "valid" does not automatically create an exception to *Blonder-Tongue.* Thus, we believe that the district court properly estopped Stevenson from asserting the validity of his patent.

We do not believe, however, that the district court's award of attorney fees to Sears was proper. A patentee should not automatically be penalized for pursuing a patent infringement action after a determination of invalidity in another suit. There must be some finding by the trial judge of unfairness, bad faith, inequitable conduct, vexatious litigation, or some similar exceptional circumstance that would bring this case within 35 U.S.C. § 285. Absent such a finding, it is improper for a trial judge to award attorney fees.

Accordingly, we affirm the district court's judgment estopping Stevenson from suing on his patent, and reverse the court's judgment awarding $5,000 in attorney fees to Sears.

AFFIRMED IN PART.

REVERSED IN PART.